UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Nesse and Tim Mackey as Trustees of the Minnesota Laborers Health and Welfare Fund, Tim Mackey and John Nesse as Trustees of the Minnesota Laborers Pension Fund, Tammy Braastad and Tim Mackey as Trustees of the Minnesota Laborers Vacation Fund, Tim Mackey and Fred Chase as Trustees of the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, Mark Ryan and Dave Borst as Trustees of the Minnesota Laborers Employers Cooperation and Education Trust, the Minnesota Laborers Health and Welfare Fund, the Minnesota Laborers Pension Fund, the Minnesota Laborers Vacation Fund, the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, and the Minnesota Laborers Employers Cooperation and Education Trust,<br><br>      Plaintiffs,<br><br>v.<br><br>Green Nature-Cycle, LLC,<br><br>      Defendant. | File No. 18-cv-636 (ECT/HB)<br><br>**OPINION AND ORDER** |

Christy E. Lawrie, Amy L. Court, and Carl S. Wosmek, McGrann Shea Carnival Straughn & Lamb, Chtd, Minneapolis, MN, for Plaintiffs.

Forrest K. Tahdooahnippah, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant Green Nature-Cycle, LLC.

Plaintiffs, trustees of employee benefit funds, brought this case under federal labor law and a collective bargaining agreement (or "CBA") against Defendant Green Nature-Cycle, a landscaping business, to recover fund contributions, liquidated damages, interest, and attorneys' fees and costs. Plaintiffs allege that Green Nature failed to pay fund contributions on behalf of its employees for work Green Nature performed on landscaping projects for the Minnesota Department of Transportation in 2017. Plaintiffs allege that the amount of the fund contributions Green Nature owes is $23,489.21. The other amounts Plaintiffs seek await computation. Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq.* ("LMRA"). For ease of reference, the CBA on which Plaintiffs base their claims will be called "the sued-on CBA."

The Parties have filed cross-motions for summary judgment, and judgment will be entered for Plaintiffs.[1] The record evidence establishes as a matter of law that Green Nature was bound to the sued-on CBA, that the sued-on CBA required Green Nature to remit the sued-for benefit contributions, and that Green Nature has no defenses to liability. Finally, the law requires that Plaintiffs be awarded liquidated damages and interest stemming from

---

[1] The Parties' motions are analyzed with the now-familiar summary-judgment standards front of mind. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255.

2

Green Nature's failure to make the benefit contributions and attorneys' fees and costs incurred in pursuing these claims, though these amounts will be determined in a later proceeding.

I

The first issue to be addressed is whether Green Nature was bound to the sued-on CBA, as Plaintiffs allege. The sued-on CBA was negotiated between a multi-employer committee of landscape contractors and the Laborers' District Council of Minnesota and North Dakota. Skoog Aff., Ex. A [ECF No. 51-1 at 1]. It contains a clause entitled "Term of Agreement" commonly referred to as an "evergreen clause" that provides as follows:

> All provisions of this Agreement shall take effect as of May 1, 2014 through April 30, 2017, and from year to year thereafter; provided however, that this Agreement may be terminated in writing by registered or certified mail to any party at least 60 days before the expiration date.

*Id.* at 7 [ECF No. 51-1 at 8]. Green Nature says it was not bound to the sued-on CBA in a way that triggers its liability for the benefit-payments and other amounts Plaintiffs seek. For Plaintiffs to prevail on this issue, there must be no genuine dispute as to any material fact that Green Nature "manifest[ed] an intention to abide and be bound by the terms of [the sued-on] agreement." *Twin City Pipe Trades Serv. Ass'n, Inc. v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 885 (8th Cir. 2014) (quotation omitted). "This inquiry is a question of fact, and focuses on the objective intent of the parties—not their subjective beliefs." *Miner v. Local 373*, 513 F.3d 854, 861 (8th Cir. 2008) (internal citation omitted).

There is no genuine dispute that Green Nature was bound to the sued-on CBA. On March 7, 2017, Green Nature's sole owner and president, Jeff Graham, signed a document entitled "Acceptance of Agreement." Tahdooahnippah Decl., Ex. 3 [ECF No. 57-3 at 13]; Lawrie Aff., Ex. A at 18–19, 28 [ECF No. 48-1 at 9, 11]. The first paragraph of the document provides:

> The undersigned Employer hereby accepts and agrees to be bound to *the standard printed Collective Bargaining Agreement* ("CBA"), negotiated between a multi-employer bargaining committee of Landscape contractors and the Laborers' District Council of Minnesota and North Dakota on behalf of its affiliated Local Unions ("Union"). The undersigned Employer delegates its bargaining authority to the multi-employer bargaining committee for the term of this Agreement. This Acceptance of Agreement along with the standard printed CBA; together constitute the Agreement ("Agreement") between the Employer and the Union.

*Id.* (emphasis added). Plaintiffs have introduced evidence showing that the sued-on CBA is the "standard printed" CBA referred to in this paragraph. Skoog Aff. ¶ 2, Ex. A; Lawrie Aff., Ex. B at 23–24; Ex. C at 114–16. Plaintiffs also have submitted evidence showing that, on the day Graham signed the Acceptance of Agreement, the individual identified in the Acceptance of Agreement as the local union representative, Mike Bubalo, e-mailed a copy of the sued-on CBA to Graham. Tahdooahnippah Decl., Ex. 9 [ECF No. 57-9].

Green Nature seems to advance two arguments in support of its position that it was not bound to the sued-on CBA, but neither raises a genuine fact dispute.[2] Green Nature

---

[2] Green Nature does not seem to dispute that it was bound to a CBA with Plaintiffs at some point. It just disputes being bound to the sued-on CBA in a way that triggers liability for Plaintiffs' claims in this case. Though its position is not clear, Green Nature appears to argue that the CBA to which it was bound either was not effective at all when Green

4

first points out that during discovery in this case Plaintiffs produced, and represented originally as controlling, a copy of a CBA identical in all respects with the sued-on CBA except that it contained an evergreen clause stating that the "provisions of this Agreement shall take effect as of May 1, 2011 through April 30, 2014, and from year to year thereafter[.]" Def. Mem. in Supp. at 6 [ECF No. 54]; Tahdooahnippah Decl. Ex. 3 at 7. No reasonable fact finder could conclude that this first-produced version of the CBA ever governed the relationship between Plaintiffs and Green Nature. Graham signed the Acceptance of Agreement in March 2017, almost three years after passage of the document's April 30, 2014 end date. No earlier Acceptance of Agreement is in the record. The Acceptance of Agreement Graham signed repeated the effective dates of the sued-on CBA. If those facts weren't enough, Plaintiffs have shown that the effective period described in the first-produced version of the CBA was a typographical error that was identified and resolved during discovery.³ Green Nature next contends that Plaintiffs "have

---

Nature worked on the Minnesota Department of Transportation Projects or was effective only for a much shorter time than Plaintiffs allege. If the CBA to which Green Nature says it was bound wasn't effective at all during this time, then Green Nature is understood to argue that it cannot be liable for any fund contributions for its work on these projects. If the CBA was effective for a shorter period, then Green Nature is understood to argue that its liability would be less than Plaintiffs allege, though Green Nature never says how much.

³     The circumstances leading to this mistaken production can be gleaned from the record. On August 22, 2016—more than six months before Graham signed the Acceptance of Agreement, and in correspondence unrelated to this case—Plaintiffs' counsel requested a copy of the "newest Landscape & Erosion Control CBA" from the union. Tahdooahnippah Decl., Ex. 8 [ECF No. 57-8]. The CBA Plaintiffs' counsel received in response to this request was a draft, Tahdooahnippah Decl., Ex. 14 ¶ 2 [ECF No. 57-14], and contained an "uncorrected typographical error" in the evergreen clause; that clause hadn't been updated and provided incorrectly that the CBA would be in effect from May 1, 2011, through April 30, 2014, *id.* ¶ 6. Plaintiffs' counsel produced this version of the

5

conceded" that whatever CBA governed their relationship "terminated on April 30, 2017."
Def. Mem. in Supp. at 6. The only authority Green Nature cites to establish this asserted concession is an admission by Plaintiffs' counsel, made in response to a question posed during a hearing on discovery motions in this case, that Plaintiffs first produced "an agreement that on its face didn't cover the period that is at issue in this lawsuit." *Id.* That admission confesses a mistake in document production; it does not support the concession Green Nature alleges.[4]

II

A

Seeking to reduce its liability, Green Nature argues that the sued-on CBA required it to contribute to the funds only on behalf of its employees who were union members (and

---

CBA to Green Nature early in discovery in this case on May 29, 2018, Tahdooahnippah Decl., ¶ 4 and Ex. 3, and the typographical error was not identified until a settlement conference on March 18, 2019, *id.*, Ex. 7 ¶ 7 [ECF No. 57-7]. Shortly after the settlement conference, the sued-on CBA was produced at least twice to Green Nature: first on April 11, 2019, attached to Plaintiffs' Requests for Admission to Defendant (Set II), Supplemental Lawrie Aff., Ex. N [ECF No. 62-1 at 5–17], and then again on May 29, 2019, in response to a subpoena, Tahdooahnippah Decl., Exs. 4, 5 [ECF Nos. 57-4, 57-5].

[4]    There is no record evidence the sued-on CBA ever was terminated in writing, as the evergreen clause allows. Plaintiffs, interpreting the phrase "from year to year thereafter" in the evergreen clause to mean "for one additional year," say that Green Nature ceased to be bound by the sued-on CBA on April 30, 2018. Tahdooahnippah Decl., Ex. 2 at 31 [ECF No. 57-2]. This interpretation is not correct. The phrase "from year to year thereafter" cannot reasonably be understood to mean "for one additional year." *Cf. Ralph's Distributing Co. v. AMF, Inc.*, 667 F.2d 670, 671 n.2 (8th Cir. 1981) (noting that a CBA that "continued from year to year until one of the parties exercised its right to terminate" continues in effect for multiple years if not actively terminated).

6

not on behalf of many of its employees who were not), but as a matter of law this is not correct.  ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Thus, the applicable CBA "determine[s] the extent of Defendant's duty to pay." *Trs. of Minn. Ceramic Tile & Allied Trades Ret. Fund v. Legacy Tile & Marble, Inc.*, No. 06-cv-2965 (JNE/SRN), 2008 WL 624120, at *6 (D. Minn. Mar. 4, 2008) (citing *Ill. Conference of Teamsters & Emp'rs Welfare Fund v. Mrowicki*, 44 F.3d 451, 458 (7th Cir. 1994)); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1349 (8th Cir. 1990) (determining that an employer and union's interpretation of a CBA was "irrelevant if the written agreement unambiguously expresses something other than what they intended").  "The Eighth Circuit has not addressed the issue, but at least three other courts of appeals have found that a designation of a union as 'the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non-union members.'" *Raines v. Integrity Acoustic Sols., Inc.*, No. 14-cv-2900 (PAM/JJK), 2015 WL 2402523, at *3 (D. Minn. May 20, 2015) (quoting *Teamsters Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984) and citing *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981) and *Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974)); *see also Nat'l Elevator Bargaining Ass'n v. Int'l Union of Elevator Constrs.*, 921 F.3d 761, 765

(8th Cir. 2019) (noting "CBAs often provide benefits for individuals who are not currently in the bargaining unit").

Here, the sued-on CBA unambiguously required Green Nature to contribute to the funds on behalf of all its employees who worked on the Department of Transportation landscaping projects, not just those employees who were union members. Under the sued-on CBA, Green Nature "recognize[d] the Union as the exclusive representative of all Employees performing work within the jurisdiction of the Union for the purpose of collective bargaining with respect to . . . fringe benefits, hours of employment and other conditions of employment." Skoog Aff., Ex. A at Art. 3.1. There is no dispute that Minnesota, where Green Nature performed its work, was "within the jurisdiction of the Union." *Id.* The sued-on CBA required Green Nature "to contribute every month, not later than the 15th day of the following month . . . [fringe benefits] for each hour worked by all Employees covered by this Agreement." *Id.* at Art. 16. Though the term "Employees" is undefined, the sued-on CBA is clear that it "applies to all Landscape Work conducted in the State of Minnesota." *Id.* at Art. 2.4. Green Nature does not contend that any of its employees did something other than "Landscape Work" on the Department of Transportation projects. If these terms left any doubt concerning Green Nature's obligation to contribute on behalf of its employees who were not union members, the agreement required Green Nature "to pay the wage rates including benefits as listed herein for all Employees covered under this Agreement from the first day of employment, *regardless of whether or not such Employees are members of the Union.*" *Id.* at Art. 5.2 (emphasis added). And then there is this term:

> The parties to this Agreement acknowledge that the provisions of this Agreement establishing rates of pay, wages, all hours of employment and other terms and conditions of employment, *including fringe benefits*, apply to Employees employed in job classifications within the jurisdiction of the Union from the first date of employment, REGARDLESS OF WHETHER OR NOT SUCH EMPLOYEES ARE MEMBERS OF THE UNION.

*Id.* at Art. 16.5(i) (italicized emphasis added; capitalization in original). Construed rationally, these provisions, whether considered separately or together, unambiguously require Green Nature to contribute fringe benefits on behalf of its non-union employees.

B

Alternatively, Green Nature raises issue preclusion as an affirmative defense. It argues that a Minnesota Department of Transportation audit of Green Nature's wage payments to its employees for their work on Department projects adjudicated this issue already and precludes Plaintiffs' claims for benefits on behalf of non-union Green Nature employees in this suit. Understanding this argument requires a brief description of the Department's audit. During Green Nature's work as a subcontractor on Department projects during 2017, one of Green Nature's employees reported to Jacquelyn Klein, a labor compliance investigator with the Department, that Green Nature was not paying him. Lawrie Aff., Ex. D at 11–12 [ECF No. 48-1 at 85]. This employee's report prompted Klein to audit Green Nature's compliance with Minnesota prevailing wage laws. *See id.* at 24–25; Graham Decl., Ex. 3 [ECF No. 56-3] ("The MnDOT Labor Compliance Unit (LCU) has completed its prevailing wage audit . . . ."). Klein began her audit by requesting documents including timecards, check stubs, certified payrolls, and any fringe-related

documents from Graham. Lawrie Aff., Ex. D at 12–13. After learning from Graham that Green Nature did not have the requested information, *id.* at 13, Klein obtained information from a Green Nature employee showing the hours and work performed on Department projects by several Green Nature employees, *id.* at 13–15. Klein determined that Green Nature had failed to pay its employees properly—in some cases, at all—and the Department obtained wage and fringe-benefit payments for Green Nature's employees, not from Green Nature, but from the projects' general contractor. *Id.* at 19–20. Klein directed that amounts recovered for unpaid fringe benefits for Green Nature's union-member employees be paid to funds Plaintiffs represent and that non-union employees be paid these amounts directly. *Id.* at 26, 46–48. Green Nature argues that Klein's directive that its non-union employees be paid directly resolved in Green Nature's favor the issue of whether Green Nature is obligated to contribute benefits on behalf of non-union employees and bars Plaintiffs from recovering those amounts in this suit.

Determining whether a state agency's decision has preclusive effect in federal court is a two-step process. First, the federal court must determine whether: (1) the state agency is acting in a judicial capacity; (2) the agency is resolving disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to be heard. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015); *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986); *see Plough ex rel. Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515 (8th Cir. 1995). If these three "eligibility factors" are met, federal courts apply state preclusion law to determine the effect a state's court would give to the agency determination. *See Plough ex rel. Plough*, 70 F.3d at 515 (applying Iowa preclusion law

to the decision of an Iowa agency). Under Minnesota law, issue preclusion, or collateral estoppel, "precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment." *Falgren v. Bd. of Teaching.*, 545 N.W.2d 901, 905 (Minn. 1996) (quoting *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn. 1990)). Issue preclusion in Minnesota is not "rigidly applied," rather, "the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Id.* (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn. 1988)). Five factors must be met for issue preclusion to apply to an agency decision:

> 1. the issue to be precluded must be identical to the issue raised in the prior agency adjudication;
>
> 2. the issue must have been necessary to the agency adjudication and properly before the agency;
>
> 3. the agency determination must be a final adjudication subject to judicial review;
>
> 4. the estopped party must have been a party or in privity with a party to the prior agency determination; and
>
> 5. the estopped party must have had a full and fair opportunity to be heard on the adjudicated issue.

*Id.*

As a matter of law, the Department of Transportation's audit does not preclude Plaintiffs from litigating in this case (and prevailing on) the issue of whether Green Nature is obligated to contribute benefits to the funds on behalf of its non-union employees. The Parties did not cite or address the three "eligibility factors," but it is doubtful at least that

11

the third eligibility factor is met. It is true that Plaintiffs provided information to Klein identifying those Green Nature employees who were union members, but there is no suggestion or record evidence showing that Plaintiffs had any opportunity to be heard during the audit. If the first-level eligibility factors were met, Minnesota's requirements for issue preclusion are not. The Department's audit resolved a different issue. Klein determined that Green Nature "failed to comply with the minimum hourly prevailing wage specifications incorporated into the contracts" Green Nature signed to work on Department projects. Graham Decl., Ex. 3 at 2. The audit did not resolve whether the sued-on CBA required Green Nature to pay benefits on behalf of its employees who were not union members. It is undisputed that Klein did not review a CBA as part of her audit and that this is consistent with her past audit practices. Lawrie Aff., Ex. D at 60–61. Had the audit addressed the sued-on CBA and resolved this question, it would have been unnecessary to the determination of the prevailing-wage issues the audit was undertaken to address. Finally, Plaintiffs were not a party to or in privity with a party to the audit. If Green Nature employees could be considered "parties" to the audit, Plaintiffs' interests are significantly broader.

III

Green Nature argues that Plaintiffs cannot be awarded the full amount of sued-for benefits because that would give Plaintiffs a double recovery. Green Nature points out correctly that the sued-on CBA says that an employer shall not "be required to duplicate fringe contributions." Skoog Aff., Ex. A at Art. 16.4. Green Nature argues that a judgment in the amount of the sued-for benefits would be prohibited "duplicate fringe contributions"

because its employees were paid their wages and fringe benefits after the Department of Transportation's audit.

Entering judgment against Green Nature for the benefits Plaintiffs seek will result in no duplicate fringe contributions. Green Nature cites no record evidence that it paid benefits to the funds or its employees. If it had paid the funds, and if these amounts were not accounted for in Plaintiffs' audit, Green Nature could just have said that. It didn't. As described earlier, the record shows that Green Nature's employees were paid wages and benefits by the Department of Transportation projects' general contractor. More to the point, the sued-on CBA required Green Nature to pay benefit contributions directly to the funds. *Id.* at Art. 16.1. Paying benefits to employees is not a substitute for this obligation. *See*, *e.g.*, *Flynn v. R.C. Tile*, 353 F.3d 953, 961 (D.C. Cir. 2004) ("Payments made to non-union employees in lieu of contributions to the Fund do nothing to remedy the harm to the Fund from the non-payment of pension contributions due under the CBA."); *O'Hare v. Gen. Marine Transp. Corp.*, 740 F.2d 160, 170 (2d Cir. 1984) ("[T]he fact that appellant's improper conduct [in providing equivalent, alternative benefits to employees] now requires it in essence to pay twice is simply irrelevant as regards its obligation to the Fund."); *Brogan v. Swanson Painting Co.*, 682 F.2d 807, 809 (9th Cir. 1982) ("The contractor's cash payment of equivalent benefits to non-union employees does not, however, in itself, excuse the contractor's obligation to contribute to the trust funds. The courts have rejected the contractor's view, finding that the employer's obligation to pay into the trusts is exactly what it contracted to do.") (quotation omitted); *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981) ("The payment of cash to nonunion employees, however well-

intentioned such payment may have been, does not excuse the obligation to make contributions to the funds."); *Local 9, Int'l Union of Operating Eng'rs v. Siegrist Const. Co.*, 458 F.2d 1313, 1316 (10th Cir. 1972) (employer's payment of equivalent benefits directly to employees does not negate employer's contracted duty to pay trust funds).

IV

Green Nature seems to argue that Plaintiffs could have avoided, and therefore cannot recover in this suit, the costs associated with their audit of Green Nature. Green Nature says Plaintiffs should just have accepted the Department of Transportation's audit as theirs, and that would have saved Plaintiffs the expense of undertaking their audit. This argument is not persuasive. It's not clear that Plaintiffs seek to recover the costs of their audit in this suit. *See* Compl. at 7–8, ¶¶ 1–5. If Plaintiffs seek to recover their pre-suit audit costs, that request would be more properly considered as part of their petition for "reasonable attorney's fees and costs of the action" under 29 U.S.C. § 1132(g)(2)(D) or for "such other legal or equitable relief" deemed appropriate, under § 1132(g)(2)(D). If it were appropriate to consider this issue now, Green Nature cites no legal authority to support its argument. If the law might support Green Nature's argument in the right fact context, this isn't it. As noted, the Department undertook its audit for a different purpose than Plaintiffs'. Though it seems reasonable to guess that the two audits likely relied on overlapping information, that's just a guess. Green Nature has not shown that the information considered in both audits was identical or overlapped to a degree that might justify the relief Green Nature seeks.

*

The entry of summary judgment in Plaintiffs' favor means Plaintiffs shall be awarded additional relief described in 29 U.S.C. § 1132(g)(2), including interest, liquidated damages, and reasonable attorneys' fees and costs of the action. Apart from the arguments addressed already, Green Nature does not dispute that these amounts shall be awarded. Because the record on the Parties' summary-judgment motions includes no amounts or computations for each of the § 1132(g)(2) categories, further submissions will be ordered, and a final judgment will be entered after those submissions have been reviewed.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiffs' Motion for Summary Judgment [ECF No. 45] is **GRANTED**;

2. Defendant's Motion for Summary Judgment [ECF No. 49] is **DENIED**;

3. The Court **DECLARES** that Defendant is liable to Plaintiffs, pursuant to the sued-on collective bargaining agreement and 29 U.S.C. § 1132(g)(2), for:

    a. $23,489.21 in unpaid contributions found due and owing from March 2017 to the present;

    b. Interest on all unpaid contributions;

    c. The greater of the interest on all unpaid contributions or liquidated damages provided for under the CBA, in accordance with the law;

    d. Reasonable attorneys' fees and costs of the action.

4. The amount of interest, liquidated damages, and attorneys' fees and costs will be determined as follows:

   a. On or before February 24, 2020, Plaintiffs may file and serve a Motion for Entry of Money Judgment in the amount Plaintiffs determine Defendant owes for interest, liquidated damages, and reasonable attorneys' fees and costs;

   b. Defendant may then file and serve a response to Plaintiffs' motion within ten (10) days of being served with the motion;

   c. In lieu of the foregoing, the Parties are welcome to file a stipulation describing these amounts. Such a stipulation shall be filed on or before February 24, 2020.

   d. No hearing will be held on these issues unless otherwise ordered.

Date: February 13, 2020

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court