UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| John Nesse and Tim Mackey as Trustees of the Minnesota Laborers Health and Welfare Fund, Tim Mackey and John Nesse as Trustees of the Minnesota Laborers Pension Fund, Tammy Braastad and Tim Mackey as Trustees of the Minnesota Laborers Vacation Fund, Tim Mackey and Fred Chase as Trustees of the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, Mark Ryan and Dave Borst as Trustees of the Minnesota Laborers Employers Cooperation and Education Trust, the Minnesota Laborers Health and Welfare Fund, the Minnesota Laborers Pension Fund, the Minnesota Laborers Vacation Fund, the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, and the Minnesota Laborers Employers Cooperation and Education Trust, | File No. 18-cv-636 (ECT/HB)<br><br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| Green Nature-Cycle, LLC, | |
| Defendant. | |

---

Christy E. Lawrie, Amy L. Court, and Carl S. Wosmek, McGrann Shea Carnival Straughn & Lamb, Chtd, Minneapolis, MN, for Plaintiffs.

Forrest K. Tahdooahnippah, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant Green Nature-Cycle, LLC.

---

Plaintiffs, trustees of employee benefit funds, brought this case under federal labor law and a collective bargaining agreement (or "CBA") against Defendant Green Nature-Cycle, a landscaping business, to recover fund contributions, interest, liquidated damages, and attorneys' fees and costs. Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq.* ("LMRA"). The Parties filed cross-motions for summary judgment. ECF Nos. 45 and 49. Plaintiffs' summary-judgment motion was granted, and Green Nature's motion was denied. ECF No. 67. Plaintiffs were awarded $23,489.21 in unpaid contributions. *Id.* at 15. Under ERISA, Plaintiffs also were awarded interest on unpaid contributions, the greater of the interest on all unpaid contributions or liquidated damages provided for under the CBA, and reasonable attorneys' fees and costs of the action, though amounts of these awards remained to be determined. *Id.* To permit a determination of these remaining amounts (absent agreement), the Parties were ordered to file briefs and supporting materials. *Id.* at 16. Based on the Parties' submissions, Plaintiffs will be awarded double interest in the amount of $5,506.66, attorneys' fees in the amount of $66,085, and costs in the amount of $3,932.

The governing law comes from a single statute, 29 U.S.C. § 1132(g)(2), and judicial decisions interpreting this provision. Section § 1132(g)(2) provides:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
>> (A) the unpaid contributions,

> (B) interest on the unpaid contributions
>
> (C) an amount equal to the greater of—
>
> > (i) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). Under the plain text of § 1132(g)(2), then, an award of (1) unpaid contributions, (2) interest on those unpaid contributions, (3) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided under the plan, and (4) reasonable attorneys' fees and costs must be awarded to Plaintiffs. *Id.* ("the court *shall* award . . ."); *see also Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 509 (3d Cir. 1992). Green Nature does not dispute this interpretation of § 1132(g)(2). Rather, Green Nature "dispute[s] the reasonableness of Plaintiffs attorneys' fees [and costs] and also Plaintiffs' calculation of interest." Mem. in Opp'n at 8 [ECF No. 74].

I

Plaintiffs seek an award of attorneys' fees in the amount of $66,085 for 287.25 hours billed by three shareholder attorneys. Mem. in Supp. at 8 [ECF No. 69]; Lawrie Decl., Ex. E [ECF No. 70-1]. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To determine the number of hours reasonably expended, "a court should consider the number of hours ordinarily necessary competently to prepare comparable cases." *Premachandra v. Mitts*, 727 F.2d 717, 733 (8th Cir. 1984) (citation omitted), *rev'd on other grounds*, 753 F.2d 635 (8th Cir. 1985) (en banc). "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) (citation omitted). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. "Once the lodestar amount has been determined, [a federal district court] may consider several other factors to determine whether the fee should be adjusted upward or downward[.]" *Buzzanga v. Life Ins. Co. of N. Am.*, No. 4:09-cv-1353 (CEJ), 2013 WL 784632, at *1 (E.D. Mo. March 1, 2013) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (limited by *Blanchard v. Bergeron*, 489 U.S. 87 (1989))). These other factors include, for example, the time and labor required for the case, the novelty and difficulty of issues presented, the skill required to properly perform the legal service, the attorneys' ability or inability to accept other cases, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or circumstances, the

amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the desirability (or undesirability) of the case, the nature and length of the attorneys' professional relationship with the client, and awards in similar cases. *Frerichs v. Hartford Life & Accident Ins. Co.*, 10-cv-3340 (SRN/LIB), 2012 WL 3734124, at *1 (D. Minn. Aug. 28, 2012) (citing *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 575 n.9 (8th Cir. 1996)). These factors are often "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Buzzanga*, 2013 WL 784632, at *1 (citation omitted).

The hourly rates charged by Plaintiffs' counsel are reasonable. Attorney Carl Wosmek was admitted to practice in 2000 and has practiced employee benefits litigation almost exclusively for more than 10 years. Lawrie Decl. ¶ 8, Ex. B. Wosmek's hourly billing rate was $290 in 2018 and $295 in 2019. Lawrie Decl., Ex. E; Mem. in Supp. at 6. Attorney Amy Court was admitted to practice in 2002 and has practiced employee benefits litigation almost exclusively for more than 16 years. Lawrie Decl. ¶ 9, Ex. C. Court's hourly billing rate was $245 in 2018, $250 in 2019, and $260 in 2020. Lawrie Decl., Ex. E; Mem. in Supp. at 6. Attorney Christy Lawrie was admitted to practice in 2008 and has practiced employee benefits litigation almost exclusively for more than 8 years. Lawrie Decl. ¶ 10, Ex. D. Lawrie's hourly billing rate was $180 in 2018 and $190 in 2019. Lawrie Decl., Ex. E; Mem. in Supp. at 6. These rates align with rates charged by other lawyers in this market experienced in employee benefits litigation and found reasonable by other judges in this District. *See Werb v. Reliastar Life Ins. Co.*, 13-cv-0669 (PJS/JSM), 2014 WL 5431585, at *3 (D. Minn. Oct. 27, 2014) (finding $350 to be a reasonable hourly rate

for attorney with four-plus decades of ERISA experience and $320 as a reasonable hourly rate for attorneys with two-plus decades of ERISA experience); *Bowers v. Life Ins. Co. of N. Am.*, 13-cv-891 (ADM/JJG), 2014 WL 4265828, at *4 (D. Minn. Aug. 28, 2014) ($320 per hour reasonable for experienced lead attorney, $260 per hour reasonable for attorney with 10 years' ERISA experience, $220 per hour reasonable for third-year associate attorney); *Frerichs*, 2012 WL 3734124, at *2 (D. Minn. Aug. 28, 2012) (collecting cases and noting in 2012 that "[c]ourts in this Circuit typically award hourly rates of $300 or less to prevailing attorneys in ERISA litigation").

Green Nature does not challenge the reasonableness of these hourly rates directly, but argues that "Plaintiffs' use of three shareholders significantly elevated the billing rate," and that a "review of the billing records shows that these shareholders performed tasks such as review of documents or cite-checking briefs, that could have been performed by associates or paralegals." Mem. in Opp'n at 9. Because these tasks could have been performed by non-shareholder attorneys, Green Nature contends that "the proper billing rate to use for all work performed by Plaintiffs' counsel is the lowest rate of the three shareholders—$180 per hour." *Id.* at 9–10. Green Nature has a point: assigning less-experienced attorneys with lower hourly rates may serve efficiency in some situations. But it is difficult to accept that premise on this record. Employee benefits litigation has its share of complexities. In view of that, Wosmek, Court, and Lawrie's significant ERISA experience almost certainly allowed them to complete tasks efficiently, offsetting higher billing rates with shorter time entries. The specific research and cite-checking examples Green Nature identifies were performed by Lawrie, who had the lowest billing rate. A

6

review of the billing records generally shows that Lawrie generally performed tasks requiring the least expertise. A review of the billing records also shows that, though Wosmek, Court, and Lawrie all worked on the case, they did not duplicate efforts. From April 2018 to April 2019, the records show that Court was primarily responsible for handling the case, with some additional work performed by Wosmek and Lawrie. Lawrie Decl., Ex. E. From April 2019 to the present, however, it appears Lawrie was primarily responsible for handling the case, with some additional work performed by Attorneys Wosmek and Court. *Id.* That three shareholders worked on this case is not inherently unreasonable, nor was it unreasonable in this specific instance given the evident handoff of duties from Attorney Court to Attorney Lawrie in April 2019.

Green Nature lodges four objections to the number of hours Plaintiffs' counsel billed. First, Green Nature argues that Plaintiffs' counsel's practice of billing in quarter-hour increments, rather than the "standard industry practice" of billing in tenth-hour increments, inflated the total number of hours billed. Mem. in Opp'n at 10–11. "It is true that some United States District Courts have found billing in increments of quarter hours rather than tenths of an hour [is] excessive, however, some have not." *Doud v. Toy Box Dev. Co.*, 4:12-cv-00335, 2015 WL 11120715, at *2 (S.D. Iowa Feb. 18, 2015) (comparing *Touhey v. Hartford Life & Accident Ins. Co.*, No. 4:10cv1440 JCH, 2013 WL 6539226 (E.D. Mo. Dec. 13, 2013) (finding quarter-hour increments unreasonable), with *Planned Parenthood of the Heartland v. Heineman*, 4:10cv3122, 2011 WL 772861 (D. Neb. Feb. 28, 2011) (finding quarter-hour increments not unreasonable)). No doubt the better practice is for lawyers to bill in tenths-of-an-hour increments, but that does not justify a

7

reduction of Plaintiffs' requested fees in this case. In addition to the absence of binding precedent or a clear trend toward finding quarter-hour billing increments unreasonable, Green Nature offers no non-arbitrary method to determine which billing entries should be reduced, and by how much, to address this issue.

Second, Green Nature argues Plaintiffs' fee request should be reduced because "[a]t every stage of this case, Plaintiffs' own conduct caused the number of hours to be needlessly increased." Mem. in Opp'n at 11. The litigation conduct Green Nature identifies does not support this assertion. Green Nature says that Plaintiffs "claim[ed] to have produced a document in error, but refus[ed] to explain the error," thereby increasing the number of hours required to litigate this case. *Id.* This is not correct. In response to Green Nature's summary judgment motion, Plaintiffs explained that the union employee who "provided the CBA to the Trustees' counsel, [] provided a draft .pdf version of the CBA. A second Word version was also on her system, but she mistakenly believed the two documents were identical." Mem. in Opp'n to Summary J. at 4 [ECF No. 61] (citations omitted). In other words, the document Plaintiffs produced in error was just that: a document produced in error. That Green Nature (fairly) turned that error into an issue to be resolved at summary judgment does not mean Plaintiffs' counsel's work rebutting that argument was unreasonable. Nor was Plaintiffs' counsel's work in applying for entry of default unreasonable. The complaint was filed March 7, 2018, and a copy of the summons and complaint was served on Green Nature on March 31. ECF No. 5. Green Nature did not respond to the complaint, and on April 24, 2018, Plaintiffs applied for an entry of default. ECF No. 6. The next day, Jeff Graham attempted to answer the complaint on

behalf of Green Nature. ECF No. 9. Graham was referred to the FBA Pro Se Project, ECF No. 10, but it took another four months for an attorney to enter an appearance on behalf of Green Nature, ECF No. 16. In the interim, Plaintiffs applied for an entry of default a second time, and default was entered on May 15, 2018. ECF No. 14. Plaintiffs' counsel billed a total of 45 minutes drafting the two applications and reviewing the entry of default. *See* Lawrie Decl., Ex. E at 4/24/2018, 5/14/2018, and 5/16/2018 entries. Under these circumstances, it was reasonable for Plaintiffs to pursue default, and Plaintiffs' counsel performed the default-related work in a reasonable amount of time. Plaintiffs' counsel's discovery conduct did not unreasonably increase their fees, either. Green Nature argues that Plaintiffs "sought extensive discovery" from Green Nature, but "[n]one of this discovery caused Plaintiffs to alter their calculations" relating to Green Nature's unpaid contributions. Mem. in Opp'n at 13. Green Nature cites no cases to support the proposition that fees incurred in seeking and reviewing discovery materials that do not alter the course of the litigation are unreasonable, and a review of Plaintiffs' billing records does not indicate Plaintiffs' counsel spent an unreasonable amount of time seeking or reviewing discovery materials. *See* Lawrie Decl., Ex. E.

Third, Green Nature argues that this case lacked complexity and therefore the number of hours expended was unreasonable. Mem. in Opp'n at 13–14. Green Nature says this case involved only two discrete legal issues: "whether the CBA covered work performed by nonmembers" and "the effect of the MNDOT audit." *Id.* at 14. This is not correct. Consider Green Nature's summary judgment motion. In addition to advancing arguments on those two issues, Green Nature argued: (1) that the CBA had expired, Mem.

9

in Supp. Summary J. at 16–20 [ECF No. 54], (2) that Plaintiffs suffered no breach-of-contract damages because Plaintiffs did not mitigate their damages, *id.* at 30–31, and (3) that Plaintiffs suffered no damages as a result of Green Nature's failure to pay fringe benefits because all employees received their fringe benefits, *id.* at 31–34. The attempt to portray this as a straightforward case to which Plaintiffs unreasonably added complexity disregards Green Nature's role in raising complicated issues. Green Nature argues that a case, *Grand Elec., LLC v. Int'l Bhd. of Elec. Workers Local 265*, is a comparator and shows that Plaintiffs unnecessarily complicated matters here. No.4:09-cv-3160, 2011 WL 6740408 (D. Neb. Dec. 22, 2011). Green Nature's description of *Grand Elec.* is incorrect. There, the prevailing party sought fees relating to "over 178 hours of work," *id.* at *7, not 109.25 hours, as Green Nature asserts, *see* Mem. in Opp'n at 13. *Grand Elec.* is also materially different from this case. Though the case included motions to dismiss and counterclaims, the court determined that only hours worked in relation to the single ERISA § 515 counterclaim were compensable under 29 U.S.C. § 1132(g)(2), and therefore decreased the requested fee award from 178 hours to 148.25 because some work was performed prior to the prevailing parties' assertion of the § 515 counterclaim. *Grand Elec., LLC*, 2011 WL 6740408, at *8. Also, the court further reduced the award because the prevailing party's billing records failed to adequately identify who performed what work, what the work entailed, and whether the work ultimately was included in a brief, motion, or pleading. *Id.* at *11. Green Nature does not argue Plaintiffs' billing records are deficient in this way, and a review of the records shows they are not. *See* Lawrie Decl., Ex. E.

Finally, Green Nature argues Plaintiffs' attorneys' fees should be reduced "to reflect Plaintiffs' partial success." Mem. in Opp'n at 14. Not so. The complaint sought "judgment against the Defendant for all unpaid fringe benefit contributions discovered to be due pursuant to the audit of the period of March 2017 through the present[.]" Compl. Prayer for Relief ¶ 3 [ECF No. 1]. The February 13 Order granting Plaintiffs' motion for summary judgment declared that Green Nature is liable to Plaintiffs for "$23,489.21 in unpaid contributions found due and owing from March 2017 to the present[.]" Order at 15 [ECF No. 67]. Plaintiffs obtained what they sought. Plaintiffs will be awarded $66,085 in attorneys' fees.

II

"[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). The CBA here requires Employers "to pay interest . . . at the rate prescribed by the Trustees in the Trust Agreements[.]" Skoog Aff., Ex. A at Art. 16.5(c) [ECF No. 51-1]. The Amended and Restated Agreement and Declaration of Trust Establishing Minnesota Laborers Health and Welfare Fund does not prescribe a rate of interest to be paid on unpaid contributions. *See* Supplemental Lawrie Aff., Exs. O, P [ECF No. 62-1]. Accordingly, the rate prescribed under § 6621 of Title 26 will be used to calculate the interest on the unpaid contributions owed to Plaintiffs.

Neither of the Parties' separate interest calculations can be accepted. Plaintiffs' calculation lacks essential record support. Plaintiffs contend that pursuant to the "Funds' Collection Policy," interest is to be calculated "at a rate equal to the actuarial assumed rate

of return for the Minnesota Laborers Pension Fund plus .5 percent when an auditor determines a discrepancy of five percent or greater than the total contributions remitted by the employer in a 12-month period." Mem. in Supp. at 3–4; Lawrie Decl. ¶ 4. However, Plaintiffs have not provided the Funds' Collection Policy. Neither the CBA nor Trust Agreement references any collection policy. Neither the CBA nor Trust Agreement says that Green Nature is bound by a collection policy. *See* Skoog Aff., Ex. A; Supplemental Lawrie Aff., Exs. O, P. Green Nature proposes that interest be calculated based on § 6621, but its calculation does not comply with that statute. Green Nature's interest rates are variable, non-round numbers. *See* Mem. in Opp'n at 16–18. This cannot be an accurate representation of the applicable interest rate because § 6621 provides that the Federal short-term rate for a given month "shall be . . . determined during such month by the Secretary," but that "[a]ny such rate shall be rounded to the nearest full percent[.]" 26 U.S.C. § 6621(b)(3). Therefore, the interest rate applicable to the April, May, and June 2017 unpaid contributions is 4%. *See* 26 U.S.C. § 6621(a)(2), (b)(3); Index of Applicable Federal Rates (AFR) Rulings, IRS, Apr. 2017, May 2017, Jun. 2017, https://apps.irs.gov/app/picklist/list/federalRates.html?indexOfFirstRow=25&sortColumn =number&value=&criteria=&resultsPerPage=25&isDescending=true. Green Nature also appears to compound interest on the unpaid contributions annually. Mem. in Opp'n at 17–18. However, courts have calculated simple interest under § 6621 in ERISA cases. *See*, *e.g.*, *Trs. of I.B.E.W. Local 405 Health & Welfare Fund v. Affordable Elec., Inc.*, No. 08-cv-117-LRR, 2009 WL 54559, at \*5 (N.D. Iowa Jan. 7, 2009); *Trs. of I.B.E.W. Local 405 Health & Welfare Fund v. Tichy Elec. Co.*, No. 07-cv-39-LRR, 2008 WL 154641, at \*9

(N.D. Iowa Jan 15, 2008); *Iowa Builders Ret. Plan v. Farmer Masonry, Inc.*, No. 05-cv-197-LRR, 2006 WL 8456806, at *6 n.7 (N.D. Iowa July 16, 2006); *Scalamandre v. Oxford Health Plans (N.Y.), Inc.*, 823 F. Supp. 1050, 1064 (E.D.N.Y. 1993).

Applying these principles here yields an interest award of $2,753.33. To explain, the CBA required contributions to be made not later than the 15th day of the month following the hours worked. Skoog Aff., Ex. A at Art. 16. Therefore, interest on the unpaid contributions from April 2017 began to accrue on May 16, 2017, interest on the unpaid contributions from May 2017 began to accrue on June 16, 2017, and interest on the unpaid contributions from June 2017 began to accrue on July 16, 2017. As of June 2, 2020, then, Green Nature owes $47.75 in simple interest on the $391.47 in unpaid contributions from April 2017, $1,539.62 in simple interest on the $12,984.30 in unpaid contributions from May 2017, and $1,165.96 in simple interest on the $10,113.45 in unpaid contributions from June 2017—or a total of $2,753.33.[1] Plaintiffs also will be awarded $2,753.33 in interest under 29 U.S.C. § 1132(g)(2)(C). That subsection requires that Plaintiffs be awarded the greater of (a) the interest on the unpaid contributions or (b) liquidated damages provided for under the plan. Plaintiffs would be entitled to $2,348.92 in liquidated damages per the CBA. Skoog Aff., Ex. 1 at Art. 16.5(b). Because the amount of interest is greater than the liquidated damages, Plaintiffs will be awarded $2,753.33 under § 1132(g)(2)(C).

---

[1] April unpaid contributions = 391.47 (378.27 + 13.20). Interest = principal * rate * time (in years) = 391.47 *.04 * (1113 days/365 days) = $47.75. May unpaid contributions = 12,984.30 (12,886.40 + 97.90). Interest = 12,984.30 * .04 * (1082/365) = $ 1,539.62. June unpaid contributions = 10,113.45 (9975.12 + 138.33). Interest = 10,113.45 * .04 * (1052/365) = $1,165.96.

III

Plaintiffs seek $19,728.61 in costs. This total includes the $400 filing fee, $28.91 for postage, $180 in service fees, $54.10 in copying fees, $50 in courier fees, $2,510.59 in transcript fees, $683.10 in deposition/transcript fees, $13 in parking fees, $12.30 for searches, and $15,796.61 in costs associated with "Westlaw Research." Lawrie Decl., Ex. F. Green Nature objects only to the inclusion of Westlaw research in Plaintiffs' request. Mem. in Opp'n at 15. Because Plaintiffs are entitled to an award of costs under a fee-shifting statute, they are not entitled to reimbursement of Westlaw research costs. *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) (noting that "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award") (quoting *Leftwich v. Harris-Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983)); *see In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 918 (8th Cir. 2011) ("*Standley* and *Leftwich* both involved the reimbursement of costs under fee-shifting statutes. District[] courts in this circuit have found these cases do not control where [] expenses are being reimbursed pursuant to a negotiated settlement."); *Affordable Elec., Inc.*, 2009 WL 54559, at *8. Accordingly, Plaintiffs will be awarded $3,932 in costs.

# ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiffs' Motion for an Award of Interest, Attorneys' Fees and Costs [ECF No. 68] is **GRANTED**;

    a. Plaintiffs are awarded $23,489.21 in unpaid contributions found due and owing from March 2017 to the present pursuant to 29 U.S.C. § 1132(g)(2)(A) and the February 13, 2020 Order [ECF No. 67];

    b. Plaintiffs are awarded $2,753.33 in interest on the unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(B) and 26 U.S.C. § 6621;

    c. Plaintiffs are awarded $2,753.33 pursuant to 29 U.S.C. § 1132(g)(2)(C);

    d. Plaintiffs are awarded $66,085 in attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2)(D);

    e. Plaintiffs are awarded $3,932 in costs pursuant to 29 U.S.C. § 1132(g)(2)(D).

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date:  June 2, 2020              s/ Eric C. Tostrud
                                 Eric C. Tostrud
                                 United States District Court